Clearfield Area Housing Corporation, Appellant, *v.* Roger L. Hughes, H. R. Obleman and Asbury W. Lee, IV, Appellees.

Clearfield County Housing Authority, Appellant, *v.* Roger L. Hughes, H. R. Obleman and Asbury W. Lee, IV, Appellees.

Argued January 8, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*W. McC. Miller, Jr.,* with him *J. A. Katarincic, J. E. Beard, III,* and *Kirkpatrick, Lockhart, Johnson & Hutchison,* for appellants.

*Carl A. Belin, Jr.,* with him *Belin, Belin & Naddeo,* for appellees.

OPINION BY JUDGE ROGERS, April 16, 1974:

In this equity action, which is a companion to the case of *Township of Lawrence, Clearfield County Housing Authority and Clearfield Area Housing Corporation v. Thompson,* 13 Pa. Commonwealth Ct. 90, 318 A. 2d 759 (1974), filed simultaneously herewith, certain property owners of Lawrence Township, Clearfield County, sought in the Court of Common Pleas of Clearfield County to enjoin the Clearfield Housing

Corporation from continuing to construct a low-income housing project near the location of the plaintiffs' homes in Lawrence Township.

Construction of the housing project which is the subject of this suit was begun soon after January 17, 1973, on which date $4,000,000 of bonds of the Clearfield Area Housing Corporation were sold and the Housing Corporation entered into a lease of the project to be constructed to the Clearfield Area Housing Authority.

The plaintiffs on March 7, 1973, filed a complaint and on May 25, 1973, an amended complaint naming the Clearfield Area Housing Corporation as defendant. No preliminary relief was sought. The Clearfield Area Housing Authority was permitted to intervene below as a defendant. The defendants filed preliminary objections, which were dismissed. The defendants filed answers. A trial was conducted in July and August 1973. On November 9, 1973, the court entered a Memorandum and Order stating in pertinent part, the following: "[B]eing convinced that injustice has been definitely committed, particularly in that the Defendants abused their discretion, now must find for Plaintiffs, H. R. Obleman and Asbury W. Lee, IV. They proceeded with contracts and construction (and have continued the same despite two proceedings seeking to terminate and discontinue such construction). The testimony clearly establishes that Defendants made no selection of the site except as they received and accepted the recommendation made by the representative of the builder. It is also quite clear from the evidence that Defendants and their builder did not comply with the requirements of sewage disposal and other matters to sustain their right to proceed with the construction. There was a complete disregard of those permanent residents of the area and the affect [sic] upon them in providing this site and continuing with any [sic]

construction of the low-income project. We are convinced that all of the action in this case by Defendants was most arbitrary; and therefore was without proper foundation."

The defendants filed exceptions which the court below dismissed by a second memorandum and this appeal followed. We have the benefit of no findings or conclusions of the court below and the only evidence as to what moved the court to grant the plaintiffs the extraordinary relief of restraining the continued construction of the project is the above quoted portion of the court's memorandum and order. We granted a supersedeas and provided an early listing for argument.

We have reviewed the record and have concluded that the injunction was improvidently granted and an abuse of the lower court's discretion.

Clearfield County being in need of subsidized housing, its commissioners created the Clearfield Area Housing Authority. Among programs of the Federal Government available to subsidize low-income housing is that known as the "Section 23 project."[1] The distinctive feature of Section 23 is that the subsidized low rent housing may be accommodations provided by private persons under contract with the public agency. The public agency leases, as lessee, private accommodations and subleases, as sublessor, the units contained therein to persons with low incomes. Through HUD, the Federal Government provides the public agency with subsidy in an amount which, added to the rents received from tenants, hopefully makes the public agency's program viable. The public agency in the project, the subject of this suit, was the Clearfield Area Housing Authority, the intervening defendant.

---

[1] Section 23 of the United States Housing Act of 1937, 50 Stat. 888, 42 U.S.C.A. §1421(b).

The original defendant, the Clearfield Area Housing Corporation, is a non-profit corporation organized to act as the private owner referred to by Section 23. The project was "put together" by a private corporation engaged in this kind of development, Hallstrom Development Corporation.

In late 1971 or early 1972, when Section 23 money became available for low-cost housing units in Clearfield County, the County Commissioners agreed that Hallstrom should develop a program for its Housing Authority. During the summer of 1972, Hallstrom, with the knowledge of the Lawrence Township supervisors, searched for sites in that municipality to accommodate an 81 unit low-income townhouse development. Hallstrom considered 24 or 25 sites and finally fixed upon a 15 acre parcel known as the Aughinbaugh tract. The site was recommended to the Township supervisors and the Clearfield Area Housing Authority in November 1972. One of its attractions, which as it developed caused this litigation, was its proximity to a residential subdivision called Country Club Hills. Hallstrom believed that the project was compatible with the existing development since the low rental townhouses were to have market values of $23,000 to $25,000, and the value of the nearby residences ranged from $15,000 to $50,000. Hallstrom employes were frequently on the site in question while it was under consideration, and there were frequent discussions and meetings concerning the project involving the township supervisors and other local officials, including the chairman of the township municipal authority, a resident of the Country Club Hills section.

In early January 1973, local sentiment against the project developed. A public meeting was conducted at which local persons were given the opportunity to express their objections. These centered on the asserted inadequacy of existing sewers and the alleged detri-

mental effect of the project on existing residential properties and their owners. Hallstrom employes who attended the January 9, 1973 meeting to provide information reported to the Authority that the only complaint made at the meeting which had any merit was that regarding the township sewer system but that the deficiencies in the operation of the sewers were not serious and could be repaired. As noted, the Housing Authority and the Housing Corporation proceeded with their plans, sold bonds worth $4,000,000, entered into various engagements and commenced construction.

It is important to note that Lawrence Township has no zoning ordinance. The record is unclear as to whether the supervisors ever properly adopted a comprehensive plan prepared jointly for the township and the Borough of Clearfield.

The lower court's memorandum finds impropriety on the part of the defendants in assertedly not complying "with the requirements of sewage disposal" and in the selection of the site.

The facts concerning the township sewer system and its availability for disposal of the sanitary sewage of the project are stated in our opinion in *Township of Lawrence, Clearfield County Housing Authority and Clearfield Area Housing Corporation v. Thompson,* 13 Pa. Commonwealth Ct. 90, 318 A. 2d 759 (1974), *supra.* They are in brief, that the township sewer system has an immense unused capacity but is infiltrated with storm water. The township's professional engineer reported that the problems with the sewers can be corrected and steps in this direction were being taken in May 1973. In any event, by reason of an order of the Department of Environmental Resources issued in May 1973, no discharge from the

project to the sewers could be made without corrections and the further approval of that Department.[2]

The Clearfield Area Housing Authority had discretion in the choice of a site. The record suggests no legal impediment to the use of the land finally determined upon. The developer in making its recommendation to the Authority and the other public bodies concerned, examined many sites over many months. The judiciary's function, below and here, was described by Mr. Chief Justice HORACE STERN in *Blumenschein v. Pittsburgh Housing Authority*, 379 Pa. 566, 109 A. 2d 331 (1954), *cert. denied*, 350 U.S. 806 (1955), as follows: "Indeed, whatever may be said of the merits or demerits of the site selected by the Housing Authority, plaintiffs wholly misconceive the extent of the judicial power to review the exercise of the Authority's discretion confided to it by the Legislature of the Commonwealth. The selection of a site for a large housing project necessarily involves many considerations; it is largely a question of practical judgment, common sense and sound discretion. By a host of authorities in our own and other jurisdictions it has been established as an elementary principle of law that courts will not review the actions of governmental bodies or administrative tribunals involving acts of discretion, in the absence of bad faith, fraud, capricious action or abuse of power; they will not inquire into the wisdom of such actions or into the details of the manner adopted to carry them into execution. It is true that the mere possession of discretionary power by an administrative body does not make it wholly immune from judicial review, but the scope of that review is limited to the

---

[2] The Commonwealth by the Attorney General intervened in *Township of Lawrence, Clearfield County Housing Authority and Clearfield Area Housing Corporation v. Thompson, supra,* in support of the appellants herein.

determination of whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. That the court might have a different opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; *judicial* discretion may not be substituted for *administrative* discretion. Accordingly, all jurisdictions which have had occasion to consider the question agree that a court cannot substitute its own judgment for that of a Housing Authority as to the proper site for a housing project." (Footnotes omitted.)

By this standard, a result in this case other than the refusal of injunctive relief and a dismissal of the complaint, would constitute a pure substitution of judicial discretion for the administrative discretion exercised by the Clearfield Area Housing Authority, supported by the elected officials of the county and township in which the project is located.

The appellees advance other arguments here not referred to by the lower court with which we will deal briefly in the interest of completeness. They contend that the Clearfield Area Housing Authority failed to take into consideration the project's relationship to "any larger plan or long-range program for the development of the area" in violation of Section 16 of the Housing Authorities Law, Act of May 28, 1937, P. L. 955, 35 P.S. §1556, which so provides. If the township supervisors in fact adopted the comprehensive plan introduced by the appellees, the project is not substantially nonconforming to the comprehensive plan. The putative comprehensive plan suggests for the area in which the project is located a density of four dwellings per acre compared with the project's five and four-tenths units per acre.

The appellees further contend that the entire program is in violation of the public advertising require-

ments of Section 11 of the Housing Authorities Law of 1937. Act of May 28, 1937, P. L. 955, 35 P.S. §1551. The provision referred to would seem to have no application to this "Section 23 Project" but only to projects to be *constructed* by authorities created pursuant to the Act of 1937. In any case, Section 22 of the Act of 1937, 35 P.S. §1562 specifically empowers authorities created thereunder to accept Federal grants in aid of any housing project within its area of operations and adds that "[i]t is the purpose and intent of this act to authorize every Authority to do any and all things necessary or desirable to secure the financial aid . . . of the Federal Government in the . . . operation of any housing project by such Authority. . . ."

The appellants contend, as by preliminary objections they did below, that the Court of Common Pleas of Clearfield County lacked jurisdiction because Section 401(a)(1) of the Appellate Court Jurisdiction Act of 1970 confers original jurisdiction of civil actions against the Commonwealth or any officer thereof upon the Commonwealth Court. Act of July 31, 1970, P. L. 673, 17 P.S. §211.401(a)(1). The appellants rely on cases declaring that municipal authorities, although created by political subdivisions, are, for some purposes, agencies of the State. However, Section 102(a)(2) of the Appellate Court Jurisdiction Act of 1970, 17 P.S. §211.102(a)(2) defines the word Commonwealth, for purposes of that Act, as not including "any political subdivision, municipal or other local authority. . . ." As the Clearfield Area Housing Authority is a local authority, we do not have original jurisdiction.

In view of our decision on the merits, we find it unnecessary to comment on the appellants' contention that the plaintiffs lacked standing to sue, beyond stating that at best it demonstrates an amendable deficiency in the plaintiffs' pleading, not a matter of substance.

The order of the court below is reversed and the complaint and amended complaint are dismissed. Costs on appellees, H. R. Obleman and Asbury W. Lee, IV.[3]

----

[3] The court below granted the defendants' motion for a compulsory nonsuit against plaintiff Roger L. Hughes at the close of the plaintiffs' case and he did not participate further in this litigation.